By the Court, Monell, J.
I think there was sufficient evidence, at least to have gone to the jury, that the sale to Whitney or to Whitney and Snow, was procured by the plaintiff. The testimony was uncontradicted, that the plaintiff spoke to Captain Snow, informing him that the vessel was for sale, and that the plaintiff introduced Captain Snow to Captain Mills and Mr. G-oodspeed. Negotiations between Whitney and Snow and Mills and Goodspeed were thereupon opened and continued three or four days, and resulted in the sale to them, or one of them.
The commissions of a broker are earned when he produces a party ready to make the purchase, (Moses v. Bierling, 31 N. Y. Rep. 462;) and enough was proved in" this case to authorize a recovery, if an employment of the plaintiff by the defendants, to make the sale, or to find a purchaser, was shown.
Some questions intended, probably, to prove a custom at New York for the sellers of vessels in all cases to pay the broker’s commissions, were properly overruled.
There was no evidence whatever of any employment of the plaintiff directly by the defendants. The plaintiff testified that he was requested by Mr. Goodspeed, a director or trustee of the company, to find a purchaser. He did not claim any other employment. And Mr. Smith, the president of the company, testified that at a meeting of the stockholders he was authorized to sell the boats of the com *314 pany, and that he did not delegate the authority to any other person.
It was claimed, however, that the plaintiff having introduced the purchasers, and the company having made the sale, this was a ratification of the employment of the plaintiff. I have not been able to find in the testimony any recognition whatever of the plaintiff by the defendants. The most the plaintiff can claim is, that he was requested or employed by. Mr. Goodspeed to find a purchaser; that he; introduced Captain Snow and Mr. Whitney to Mr. Good-speed and Captain Mills. All the subsequent negotiations were conducted by Mr. Mills with the president of the company, and there was nothing in any of the interviews or negotiations which recognized the plaintiff, or in which he was spoken of or alluded to by the defendants-. Mr. Good-speed was shown to have had authority either to sell or to procure a broker to sell the vessel. As a director or trustee of the company he had no such authority.
I think the evidence failed to show an employment of the plaintiff by the defendants, to sell or to procure a purchaser for the steamboat, and that upon all the evidence it was not error to dismiss the complaint for a failure of proof.
But it is insisted that the exclusion of some evidence offered by the plaintiff was erroneous.
A witness connected with a telegraph office in Hew York, produced a telegraphic dispatch purporting to have been signed by Smith (the defendants’ president) and addressed to Captain Mills (then in charge of the steamboat) “ authorizing the sale of the steamer." The defendants’ counsel objected to the dispatch as evidence, but consented that it should be examined by the court. It was examined and excluded by the court, on the ground that telegraphic dispatches are usually private communications between individuals, and should be privileged, and the court thought it against public policy to allow them to be read in evidence.
Without concurring in .the reason assigned by the learned j ustice, I think there is another satisfactory one for exclud *315 ing the evidence. It is claimed by the plaintiff that the telegram contained evidence tending to show a recognition and ratification by the defendants of the plaintiff’s employment. If it contained any such evidence, and if the proof was sufficient to allow the paper offered to be read, of which I express no opinion, as the objection was only to the materiality of the evidence, I have no doubt, it was competent proof. But in my opinion it contained no evidence whatever favorable to the plaintiff. It was at most an authority to Captain Mills to sell the steamer. Now it is not pretended that the plaintiff had been employed by Captain Mills. The plaintiff claimed no other employment than that of Mr. Goodspeed. All the evidence concurs that pending the negotiations with Whitney and Snow for the sale to them, Captain Mills telegraphed to Mr. Smith, the president, for the price and terms of sale. The plaintiff so testified, and also testified substantially that the telegram offered in evidence was a reply to Mills, consenting to sell at the price proposed. Not only is there no evidence of any employment of the plaintiff by Mills, but the evidence is very clear and positive that Mills had no authority to employ him. Therefore, the only possible effect which could have been given to the telegram as evidence, was, that it authorized Mills to sell the steamboat. But it did not, directly nor by indirection, recognize the employment of the plaintiff by Goodspeed, nor furnish any evidence of a ratification by the defendants of such employment.
The telegram was therefore wholly immaterial, and for that reason was properly excluded.
There was some conflicting evidence, but upon subjects not material to the main issue between the parties.
Taking the case as made by the plaintiff, without any reference to the conflict of evidence, and there was a failure to show an employment of the plaintiff by the defendants, and the complaint was therefore properly dismissed.
The judgment and order should be affirmed, with costs.